IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SHARON M.,

        Plaintiff,

  v.                                        Civil Action 2:21-cv-3957
                                              Judge James L. Graham
                                              Magistrate Judge Jolson

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Sharon M., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I. BACKGROUND**

This is Plaintiff's third case before this Court. Plaintiff has previously filed numerous applications for benefits; the first on July 25, 2006, with a decision denying benefits on August 6, 2009. (Tr. 95–111). Plaintiff's second application for benefits was filed on October 26, 2010, with a decision denying benefits on September 18, 2012. (Tr. 112–34). On March 18, 2014, Plaintiff appealed that decision of the Commissioner in this Court. *See Sharon M. v. Comm'r of Soc. Sec.*, No. 2:14-cv-262 (S.D. Ohio).

Plaintiff filed her next application for benefits on February 18, 2014, in which she alleged that she became disabled on July 19, 2004. On May 23, 2016, the application was denied in a determination issued by Administrative Law Judge Thomas L. Wang. (Tr. 135–53).

Plaintiff filed her current application for SSI on June 30, 2016, again alleging disability beginning July 19, 2004. (Tr. 265–70). After this application was denied initially and on reconsideration, Administrative Law Judge Noceeba Southern (the "ALJ") held a video hearing on June 15, 2018. (Tr. 37–69). On December 6, 2018, the ALJ issued a decision denying Plaintiff's application for benefits. (Tr. 12–36). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6).

Thereafter, on December 4, 2019, Plaintiff appealed the final decision of the Commissioner in this Court. *See Sharon M. v. Comm'r of Soc. Sec.*, No. 2:19-cv-5319 (S.D. Ohio). Upon a Joint Motion for Remand, this Court remanded the case to the Commissioner. After the Appeals Council issued a remand order (Tr. 2214–19), a telephone hearing was held on February 26, 2021. (Tr. 2163–82). Plaintiff's application was denied again on April 13, 2021. (Tr. 2133–62). Plaintiff did not request review by the Appeals Council, opting instead to directly file the instant suit in this Court on July 15, 2021. (Doc. 1).

The Commissioner filed the administrative record on September 16, 2021 (Doc. 6). The matter has been briefed and is ripe for consideration. (Docs. 9, 10, 11).

A.        **Relevant Hearing Testimony**

The ALJ summarized Plaintiff's February 26, 2021 hearing testimony as follows:

> At the hearing, [Plaintiff] testified she is unable to work due to pain in her lower back and pain and numbness down her legs to her feet. Nothing helps her pain. She has pain in her shoulder. She has difficulty focusing due to her pain. [Plaintiff] testified she can stand for about 20 minutes before she has pain in her lower back and hips and needs to walk around or sit down. She can sit for about 10 minutes before needing to change position. She has problems turning her head side to side, and looking up. She testified she has migraines at least once a week. [Plaintiff] testified she falls sometimes. She has difficulty buttoning things, and drops things. She testified she grouchy. She testified she is moody and cries for no reason. She snaps at everyone.

(Tr. 2144).

### B. Relevant Medical History

Because Plaintiff attacks only the ALJ's treatment of her mental health impairments, the Court focuses on the same. The ALJ summarized Plaintiff's medical records and symptoms related to her mental impairments:

> [T]reatment notes from May 11, 2016 detail that [Plaintiff] denied depression or anxiety (Exhibit D9F/5). June 2016 records detail that [Plaintiff] had an appropriate mood and was pleasant and cooperative (Exhibit D11F/3). In August 2016, [Plaintiff] denied depression (Exhibit D15F/112). An examination of [Plaintiff] revealed a neutral mood and appropriate affect (Exhibit D15F/114). Dr. Miller, consultative examiner, evaluated [Plaintiff] in September 2016 and noted that [Plaintiff] drove to the examination (Exhibit D19F/3). Dr. Miller observed that [Plaintiff] was cooperative and friendly but anxious throughout the examination (Exhibit Dl 9F/3). October 2016 treatment notes detail that [Plaintiff] reported her depression was well controlled with medication (Exhibit D24F/1). An examination revealed a normal mood and affect (Exhibit D24F/5). At that time, [Plaintiff]'s medication was modified for her reported anxiety (Exhibit D24F/4). Mental health treatment notes from November 2016 indicate that [Plaintiff] reported a good mood, denied depression, and endorsed limited anxiety (Exhibit D27F/16). At that time, [Plaintiff]'s symptoms continued to be treated conservatively, with medication (Exhibit D27F/18).
>
> January 2017 treatment notes detail that [Plaintiff] denied anxiety and depression (Exhibit D31F/3). Upon examination [Plaintiff] was observed to have a normal mood with an appropriate affect (Exhibit D31F/5). Although [Plaintiff]'s depression was noted as worsening in February 2017, treatment continued to be medication based (Exhibit D38F/6). In March 2017 [Plaintiff] reported a good mood, with moderate depression and mild anxiety (Exhibit D42F/18). Based upon [Plaintiff]'s reporting of medication concerns, her medications were modified (Exhibit D42F/20). Thereafter, in April 2017 [Plaintiff] reported that she felt medication was working, but that she required a dosage increase (Exhibit D42F/33). Based upon such request, her medication dosage was modified (Exhibit D42F/35). A physical examination of [Plaintiff] in April 2017 detailed that she had a normal mood and affect (Exhibit D47/5). July 2017 treatment notes reveal that [Plaintiff] reported doing well on psychiatric medication (Exhibit D46F/50). At that time, [Plaintiff]'s medications were refilled (Exhibit D46F/52). Subsequently, in November 2017 [Plaintiff] reported that she was doing good and only required medication refills (Exhibit D46F/65). Based upon such reporting, [Plaintiff]'s medication was refilled (Exhibit D46F/67). January 2018 treatment notes detail that [Plaintiff] was observed to have a depressed mood with tearfulness and normal attention span and concentration (Exhibit D47F/39). Despite such observations, it was noted that [Plaintiff] was doing better with medication and [Plaintiff]'s

> medication was continued (Exhibit D47F/40). An examination of [Plaintiff] in April 2018 revealed that she was crying, snappy, and irritable (Exhibit D46F/70). As [Plaintiff]'s primary care physician modified her medication, such medication was refilled in consideration of [Plaintiff]'s report of the efficacy of this medication (Exhibit D46F/70-72).
>
> Subsequent records document little as far as mental health complaints or related treatment. As of a May 2019 primary care visit, [Plaintiff] denied sense of great danger, anxiety, suicidal thoughts, mental problems, depression, thoughts of violence, and frightening vision sounds. She denied any sleep disorders. She appeared in no acute distress (Exhibit D58F). Physical medicine and rehabilitation records in September 2020 note [Plaintiff] denied depression or anxiety (Exhibit 60F/14). As of a November 2020 primary care visit, she reported compliance with her medications. She reported no significant anhedonia, tearfulness, suicidal or homicidal ideation. On examination mood, affect, and behavior were normal (Exhibit D65F).

(Tr. 2148–49).

The ALJ weighed the medical source opinions as to Plaintiff's mental health impairments as follows:

> The opinions of the state agency psychological consultants are given some weight. While the undersigned notes [Plaintiff] has a history of depression and anxiety, records repeatedly document normal mood, affect, and behavior on exam; and [Plaintiff] often denied anxiety or depression (Exhibit D24F/4-5; D27F/16; D31F/3-5; D49F/8; D65F). Furthermore, her depression and anxiety have been managed conservatively with medication from her primary care provider, without intensive outpatient professional psychiatric care, mental health counseling, or inpatient psychiatric care. Giving some weight to the psychological consultants in light of [Plaintiff]'s depression and anxiety, the undersigned finds she can work in a static environment; she can work in a low stress job, which is defined as only occasional changes and occasional decision-making in the workplace setting. She can tolerate goal-based work, not at a production rate pace with no strict production quotas. However, the undersigned notes the need for "some flexibility as to the scheduling of breaks' is not well defined. Furthermore, there is no evidence, based on [Plaintiff]'s normal mental status examinations, conservative treatment and significant activities, that she requires breaks outside of routine breaks for any mental health symptoms. However, in providing some accommodation for this opinion, the undersigned finds she should be able to tolerate a position where routine breaks are provided every two hours but she may seek flexibility in the break schedule which is defined as seeking permission to take a break a few minutes earlier or later than scheduled which may or may not be granted.
>
> Dr. Miller opined that [Plaintiff] had no difficulty understanding, remembering, and

4

carrying out instructions, no significant difficulties getting along with others, some difficulty maintaining attention and concentration, and impairments with regard to her ability to deal with stress and pressure (Exhibit D19F/4-5). The undersigned gives some weight to the opinion of Dr. Miller and credits such opinion as based upon an examination of [Plaintiff] (Exhibit D19F). However, the undersigned gives less weight to Dr. Miller's opinion as it is, at least in part, based upon [Plaintiff]'s subjective complaints, rather than Dr. Miller's examination of [Plaintiff] (Exhibit D19F). In addition, Dr. Miller's opinion is inconsistent with treatment notes that detail conservative treatment of [Plaintiff]'s mental impairments (Exhibits D38F/6; D42F/20, 35; D46F/52, 65; D47F/40, 70 -72).

(Tr. 2150–51).

### C. The ALJ's Decision

The ALJ found that Plaintiff has not engaged in substantial gainful activity since June 30, 2016, the application date. (Tr. 2140). The ALJ determined that Plaintiff suffered from the following severe impairments: asthma, obesity, diabetes mellitus, osteoarthritis of the right knee, left foot tendonitis, degenerative disc disease and spondylosis of the lumbar spine, bilateral sacroiliitis, peripheral neuropathy, depressive disorder, mood disorder, and anxiety, and obstructive sleep apnea. (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (Tr. 2141).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

[Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can stand and/or walk for four hours in an eight-hour workday. She can sit for six hours in an eight-hour workday. She can never crawl or climb ladders, ropes, and scaffolds. She can frequently balance, occasionally stoop, kneel, crouch, and climb ramps and stairs. She cannot have more than incidental exposure to pulmonary irritants such as fumes, odors, dusts, or gases. She should avoid the use hazardous machinery. She cannot be exposed to unprotected heights. She can work in a static environment; she can work in a low stress job, which is defined as only occasional changes and occasional decision-making in the workplace setting. She can tolerate goal-based work, not at a production rate pace with no strict production quotas. Should be able to tolerate a position where routine breaks are provided every two hours but the hypothetical individual may seek flexibility in the break schedule which is defined as seeking permission to take a break a few minutes earlier or later than scheduled which may or may not be granted.

(Tr. 2143–44).

As for the allegations about the intensity, persistence, and limiting effects of Plaintiff's symptoms, the ALJ found that they "are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 2144). Specifically, she found that the record the record lacks significant mental health treatment outside of medication from her primary care provider, with no inpatient psychiatric hospitalizations. (Tr. 2149). After considering the evidence of record, the assessed RFC incorporates Plaintiff's limitations that are supported by the evidence. (Tr. 2151–52).

The ALJ determined that Plaintiff has no past work history. (Tr. 2152). Relying on the vocational expert's testimony, the ALJ concluded that Plaintiff could perform light exertional jobs that exist in significant numbers in the national economy, such as a mail clerk, office helper, or storage rental clerk. (Tr. 2152–53). She therefore concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since June 30 2016, the date the application was filed (20 CFR 416.920(g))." (Tr. 2153).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this

6

end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

In her Statement of Errors, Plaintiff contends that: (1) the ALJ's mental RFC does not account for all the opined limitations that the ALJ credited; and (2) the limitation on the President of the United States' power to remove the Commissioner of Social Security is unconstitutional, and thus, the Commissioner's delegation of power to the ALJ was defective. (Docs. 9, 11).

### A. RFC

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 416.945(a). The Social Security regulations, rulings, and Sixth Circuit precedent provide that the ALJ is charged with the final responsibility in determining a claimant's residual functional capacity. *See* 20 C.F.R. § 416.927(d)(2) (the final responsibility for deciding the residual functional capacity "is reserved to the Commissioner"). And it is the ALJ who resolves conflicts in the medical evidence. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). In doing so, the ALJ will give each opinion the weight deemed appropriate based on factors such as whether the physician examined or treated [Plaintiff], whether the opinion is supported by medical signs and laboratory findings, and whether the opinion is consistent with the entire record. 20 C.F.R. § 416.927(c). The ALJ may reject an opinion that is inconsistent with the record. 20 C.F.R. § 416.927(c)(4); *Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 585 (6th Cir. 2010). The ALJ must provide "a meaningful explanation regarding the weight given to particular medical

7

source opinions." *Mason v. Comm'r of Soc. Sec.*, No. 1:18 CV 1737, 2019 WL 4305764, at *7 (N.D. Ohio Sept. 11, 2019) (citing SSR 96-6p, 1996 WL 374180, at *2).

Plaintiff says the ALJ erred when she accorded the opinions of state agency psychological consultants "some" weight, indicated she wanted to provide some accommodation for their opinion that Plaintiff would need flexibility in the scheduling of breaks, and yet ultimately adopted a redefined limitation that "is not actually a limitation at all." (Doc. 9 at 8). The Commissioner, however, maintains that the RFC is supported by substantial evidence, and the ALJ provided a sufficient explanation for why the limitation was not adopted as opined by the state agency consultants. (Doc. 10 at 24–30). While the Undersigned agrees with Plaintiff that the ALJ's limitation did not meaningfully accommodate the need for flexibility in breaks, this does not amount to error, given that the ALJ found "no evidence . . . that [Plaintiff] requires breaks outside of routine breaks . . . [,]" and that conclusion is supported by substantial evidence. (Tr. 2151).

Particularly, the ALJ wrote:

> The opinions of the state agency psychological consultants are given some weight. While the undersigned notes the claimant has a history of depression and anxiety, records repeatedly document normal mood, affect, and behavior on exam; and the claimant often denied anxiety or depression (Exhibit D24F/4-5; D27F/16; D31F/3-5; D49F/8; D65F). Furthermore, her depression and anxiety have been managed conservatively with medication from her primary care provider, without intensive outpatient professional psychiatric care, mental health counseling, or inpatient psychiatric care. Giving some weight to the psychological consultants in light of the claimant's depression and anxiety, the undersigned finds she can work in a static environment; she can work in a low stress job, which is defined as only occasional changes and occasional decision-making in the workplace setting. She can tolerate goal-based work, not at a production rate pace with no strict production quotas. However, the undersigned notes the need for "some flexibility as to the scheduling of breaks' is not well defined. Furthermore, there is no evidence, based on the claimant's normal mental status examinations, conservative treatment and significant activities, that she requires breaks outside of routine breaks for any mental health symptoms. However, in providing some accommodation for this opinion, the undersigned finds she should be able to tolerate a position where routine breaks are provided every two hours but she may seek flexibility in the break

>schedule which is defined as seeking permission to take a break a few minutes earlier or later than scheduled which may or may not be granted.

(Tr. 2150–51).

Both at the initial and reconsideration levels, the state agency psychological consultants found that Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods and perform activities within a schedule. (Tr. 168, 188). They both further concluded that Plaintiff would have difficulty in sustained concentration and persistence due to her anxiety and depression but could sustain work "in a setting where there are no demands for a rapid pace and some flexibility is provided as to the scheduling of breaks." (Tr. 169, 189). In reaching this conclusion, both consultants afforded the opinion of Marc E. Miller, Ph. D., "[g]reat weight . . . as his findings are supported by the rationalization and evidence in file." (Tr. 167, 187).

Dr. Miller performed a psychological evaluation of Plaintiff on September 12, 2016. (Tr. 1489). He noted that Plaintiff reported "difficulty with chronic anxiety, depression and moodiness[,]" and that particularly she described her anxiety as involving a racing mind, problems keeping her mind on task, and constant worry. (Tr. 1490–91). He further opined that Plaintiff would have "some difficulty" in maintaining attention span and concentration and "impairment" in dealing with stress and pressure due to her anxiety. (Tr. 1492–93).

Unlike the state agency psychological consultants, the ALJ afforded Dr. Miller's opinion only "some weight." (Tr. 2151). Particularly, the ALJ credited that the opinion was based upon an examination of Plaintiff, but also recognized that the opinion was limited in the respect that it was based on Plaintiff's subjective complaints. (*Id.*). The ALJ further found that Dr. Miller's opinion was "inconsistent with treatment notes that detail conservative treatment of [Plaintiff's] mental impairments." (*Id.*) (citing Tr. 1761, 1804, 1819, 1892, 1905, 1954) (detailing that Plaintiff's mental impairments were treated conservatively with medication).

9

Significantly, many of the treatment notes which the ALJ found established that Plaintiff's symptoms were not as severe and limiting as she alleged were not available at the time the state agency psychological consultants, or Dr. Miller, rendered their opinions. Jennifer Swain, Psy. D., completed Plaintiff's initial disability determination on September 17, 2016. (Tr. 169). Irma Johnston, Psy. D., completed the reconsideration disability determination on January 4, 2017. (Tr. 189). The conversative treatment notes detailed by the ALJ, which she found made Dr. Miller's and the state agency psychological consultants' opinions less persuasive, were collected from January 2017 through November 2020. (Tr. 2148–49). The ALJ, therefore, had almost four years of additional records supporting her decision.

On January 11, 2017, Plaintiff denied anxiety and depression, and was observed to have a normal mood with an appropriate affect. (Tr. 2148) (citing Tr. 1655, 57). By February, Plaintiff's depression was assessed to have deteriorated, but she was provided with an updated medication for sleep and mood. (*Id.*) (citing Tr. 1761). In March, Plaintiff reported a good mood with moderate depression and mild anxiety. (*Id.*) (citing Tr. 1802). She did, however, express that she felt her medication could be working better, and her doctor prescribed a substitute for one of her medications. (*Id.*) (Tr. 1804). By April, she felt the medication was more effective, but requested an increased dosage, which her doctor accommodated. (*Id.*) (citing Tr. 1817 ("She feels like [P]axil is working, but she feels like she needs an increase.")).

By July 2017, Plaintiff was reporting that the medication was effective. (*Id.*) (citing Tr. 1890 ("She reported she is doing well on meds[.] . . . She feels like she is more able to control her emotions now.")). And in November, she continued to report she was doing well on the medications, simply requesting refills. (*Id.*) (citing Tr. 1905 (denying depression, reporting good mood, and reporting no anxiety and feeling calm)). In January 2018, Plaintiff was "observed to

10

have a depressed mood with tearfulness and normal attention span and concentration[,]" and was otherwise noted to be doing better on medication (*id.*) (citing Tr. 1953–54), including Celexa, which she had begun the month previous. (Tr. 1950). In April, it was again noted that Plaintiff's primary care physician had switched her from Paxil to Celexa, which she liked better, and she was continued on that medication. (Tr. 2148) (citing Tr. 1910–12).

In other words, though significant time was spent adjusting Plaintiff's medications in type and dosage, after a year and a half she appeared to have found a protocol that worked for her depression and anxiety. And the records the ALJ reviewed over the next several years substantiated the same: "Subsequent records document little as far as mental health complaints or related treatment." (*Id.*). In May 2019, Plaintiff denied anxiety and depression and appeared to be in no acute distress upon examination. (Tr. 2148–49) (citing Tr. 2478–79). In September 2020, Plaintiff continued to deny depression and anxiety and was noted to have normal mood and affect. (Tr. 2149) (citing Tr. 2495). And in November 2020, she was noted to be compliant with medication, with no significant depression symptoms, and an observed normal mood. (*Id.*) (citing Tr. 2602, 04).

Based on the foregoing, the ALJ concluded that "[t]he frequency and extent of the treatment sought by [Plaintiff] is not comparable with the degree [of] her subjective complaints as her treatment has been essentially routine and/or conservative in nature." (Tr. 2149). The ALJ further noted that "the record lacks significant mental health treatment outside of medication from her primary care provider, with no inpatient psychiatric hospitalizations." (*Id.*). Upon review of the record, the Undersigned finds that the ALJ's conclusion is supported by substantial evidence. That conclusion further supported the ALJ's decision to assign only some weight to Dr. Miller's opinion, which she noted was "inconsistent with treatment notes that detail conservative treatment of

11

[Plaintiff's] mental impairments." (Tr. 2151). Thus, unlike the state agency psychological consultants, who assigned great weight to Dr. Miller's opinion, the ALJ felt no need to incorporate a limitation for flexibility in breaks.

At base, there is a clear through line to the ALJ's reasoning that "there is no evidence, based on [Plaintiff's] normal mental status examinations, conservative treatment and significant activities, that she requires breaks outside of routine breaks for any mental health symptoms." (Tr. 2151). The Undersigned agrees with Plaintiff that the ALJ's nod to provide "some accommodation" to the flexibility limitation was not a limitation at all. (*Id.*). But, given that the ALJ concluded that only routine breaks were necessary to accommodate Plaintiff's mental health symptoms, the failure to provide a limitation for flexibility in breaks is not error. Said differently, the ALJ thought the evidence demonstrated Plaintiff needed only routine breaks, and the RFC provided just that: routine breaks every two hours. Because the ALJ relied upon substantial evidence in the record to support that conclusion, and the Court is able to trace the path of her reasoning, remand is not appropriate.

If remand were ordered, the ALJ could simply eliminate the sentences noting "some accommodation" to the flexibility limitation, which she ultimately believed was unnecessary given the evidence. If she did so, her decision would still be supported by substantial evidence, and Plaintiff's disability determination would remain unchanged. Though the inclusion of the "some accommodation" language in the decision was odd, it does not prevent the Court from understanding the ALJ's decision as a whole and conducting a meaningful review. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). And it does not amount to reversible error. *See, e.g., Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) ("When 'remand would be an idle and useless formality,' courts are not required to 'convert judicial review of agency action into a ping-pong game.'" (quoting *Nat'l Labor Relations Bd. v. Wyman-Gordon*

*Co.*, 394 U.S. 759, 766 n.6 (1969)); *id.* (citing *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result.")).

Accordingly, the Undersigned finds Plaintiff's first assignment or error lacks merit.

**B. Separation of Powers**

Plaintiff also contends that remand is required because a statute that provided tenure protection to the former Commissioner of Social Security, Andrew Saul, violated the separation of powers doctrine, and therefore, the decision to deny her benefits was made by individuals who lacked a proper delegation of power to make benefits determination. This contention lacks merit.

*1. Plaintiff's Constitutional Claim is Procedurally Improper*

As an initial matter, the claim is procedurally improper. Plaintiff's Complaint does not include any Constitutional claims. (Doc. 4). Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, however, that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although a complaint need not provide "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell v. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). At a minimum, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id*. Here, the United States Supreme Court case upon which Plaintiff bases her Constitutional claim was decided on June 20, 2020. Yet Plaintiff gave no notice, let alone fair notice, of her Constitutional claim in her July 19, 2021 Complaint. *See John R. v Comm'r of Soc. Sec.*, Case No. C20-6176-MLP, 2021 WL 5356719, *7 (W.D. Wash. Nov. 16, 2021) (finding that a plaintiff failed to comply with Rule 8 by failing to plead a separation of powers claim in complaint seeking judicial review of Commissioner's decision to deny benefits); *Shannon R. v. Comm'r of Soc. Sec.*, Case No. C21-5173, 2021 WL 5371394, at * 6–7 (Nov. 18, 2021) (same).

For that reason, she failed to comply with Rule 8.

### 2. Plaintiff's Constitutional Claim Lacks Merit

But even if Plaintiff's Complaint was rule compliant, her Constitutional claim lacks substantive merit. Removal of the Commissioner is governed by 42 U.S.C. § 902(a)(3) which provides that the Commissioner may only be removed from office "pursuant to a finding by the President of neglect of duty, malfeasance in office." *Id*. The parties agree that two recent United States Supreme Court cases cast doubt on the constitutionality of that provision.

In *Seila Law LLC v. Consumer Financial Protection Bureau*, the Supreme Court held that a provision that allowed the president to remove the Director of the Consumer Financial Protection Bureau ("CFPB") only for "inefficiency, neglect of duty, or malfeasance of office," 12 U.S.C. § 5491(c)(3), violated the separation of powers doctrine by insulating the director from removal by the President. 140 S.Ct. 2183, 2197 (2020). In *Collins v. Yellin*, decided one year later, the Supreme Court held that a provision limiting the President to removing the Director of the Federal Housing Finance Agency ("FHFA") only for cause similarly violated the separation of powers doctrine. 141 S.Ct. 1761, 1783 (2021) (holding that "*Seila Law* is all but dispositive"). Plaintiff asserts that like the Directors of the CFPB and the FHFA, the Commissioner of Social Security is a single officer at the head of an administrative agency, and therefore, §902(a)(3)'s attempt to impose any restraints on the President's power to remove the Commissioner also violates the separation of powers doctrine. (Doc. 9 at 13). The Commissioner agrees. (Doc. 10 at 12) (citing Office of Legal Counsel, U.S. Dep't of Justice, Constitutionality of the Commissioner of Social Security's Tenure Protection, 2021 WL 2981542 (July 8, 2021)).

Plaintiff further asserts that because this removal provision is unconstitutional, any delegations of power by Former Commissioner Saul, including delegations of authority to ALJs or the Appeals Council who determined her benefits claims, were invalid. (Doc. 9 at 13–15). The

14

Commissioner contends that Plaintiff's argument fails because the ALJ who determined Plaintiff's claim on April 13, 2021, held office on that date, not because of a delegation of authority from Former Commissioner Saul, but because of a ratification of delegated authority in July 2018,[1] by Former Acting Commissioner Nancy Berryhill. (Doc. 10 at 14–16). And the Commissioner correctly notes that an Acting Commissioner is not subject to § 902(a)(3)'s removal provision, and therefore that provision's constitutionality, or lack thereof, is irrelevant. *See Collins*, 141 S.Ct. at 1781 (because the FHFA removal restrictions only applied to the Director, "any constitutional defect in the provisions restricting the removal of a confirmed Director would not have harmed [the plaintiffs], and they would not be entitled to any relief" from actions of the Acting Director who enjoyed no such removal protections); *Thomas E. v. Comm'r of Soc. Sec.*, C21-5107-BAT, 2021 WL 5415241, *5 (W.D. Wash. Nov. 19, 2021) (finding no constitutional injury where ALJ's appointment was ratified by Acting Director Berryhill who, as Acting Director, was not subject to the removal provision in § 902(a)(3)); *Alice T. v. Comm'r of Soc. Sec.*, 8:21CV14, 2021 WL 5302141, *18 (D. Neb. Nov. 15, 2021) (same); *Boger v. Kijakazi*, No. 1:20-cv-00331-KDB, 2021 WL 5023141, * 3 n.4 (W.D.N.C Oct. 28, 2021) ("Plaintiff's constitutional 'removal restriction' argument is likely not even applicable to this case because [the ALJ] was appointed by an Acting Commissioner of Social Security who *could* be removed from the office at the President's discretion.") (emphasis in original).

Nevertheless, Plaintiff asserts that the ALJ and the Appeals Council adjudicated her

---

[1] In *Lucia*, the Supreme Court found that the United States Security Exchange Commission (SEC) ALJs were "inferior officers" under the Appointments Clause, U.S. Const. art II, § 2, cl. 2, and therefore, had to be appointed by a President, a court, or the head of an agency instead of lower-level staff. *Lucia v. S.E.C.*, 138 S.Ct. 2044, 2051 (2018). Although *Lucia* involved ALJs at the SEC, on July 16, 2018, Acting Commissioner Berryhill ratified the appointment of the Social Security Administration's ALJ's and administrative appeals judges who were previously appointed by lower-level staff in response to the ruling in *Lucia*. See SSR 19-1p, 84 Fed Reg. 9582, (2019).

disability application pursuant to a delegation of authority from Former Director Saul. (Doc. 9 at 13–15). The Court need not resolve this factual dispute but finds instead that even if Former Director Saul appointed the ALJ and Appeals Council judges who determined Plaintiff's benefits claim, the constitutionality of § 902(a)(3) would not warrant remand for several reasons.

First, even if the removal provision in § 902(a)(3) is unconstitutional, it would not have deprived Former Commissioner Saul of the ability to delegate power to others to decide Plaintiff's benefit claim because of the doctrine of severability. As the Supreme Court noted in *Seila Law*, "one section of a statute may be repugnant to the Constitution without rendering the whole act void." 140 S.Ct. 2208 (quoting *Loeb v. Columbia Township Trustees*, 179 U.S. 472, 490 (1900)). Indeed, even in the absence of a severability clause, when "confronting a constitutional flaw in a statute, [the Supreme Court tries] to limit the solution to the problem, severing any problematic portions while leaving the remainder intact." *Id*. (quoting *Free Enterprise Fund v. Public Co. Accounting Oversight Bd*., 561 U.S. 477, 508 (2010)). For that reason, in *Seila Law*, the Supreme Court found that the unconstitutional removal provision was severable from the remainder of the CFPB's governing statutes because the CFPB was capable of functioning independently even if the unconstitutional removal provision was stricken. 140 S.Ct. at 2209–10, 2245. Such is the case here. If the removal provision in § 902(a)(3) is stricken, the Social Security Administration would remain fully functional. *Alice A. v. Comm'r of Soc. Sec.*, Case No. C20-5756, 2021 WL 5514434, *6 (W.D. Wash. Nov. 24, 2021) (finding that plaintiff's separation of powers claim failed, in part, because even if § 902(a)(3) was unconstitutional it was severable from the remainder of the statutes governing the Social Security Administration); *Shaun A. v. Comm'r of Soc. Sec.*, Case No. C21-5003-SKV, 2021 WL 5446878, *4 (W.D. Wash. Nov. 22, 2021) (same); *John R. v Comm'r of Soc. Sec*., 2021 WL 5356719, *8 (same).

16

In addition, even if the removal provision in § 902(a)(3) is unconstitutional, that would not have automatically rendered Former Commissioner Saul's appointment invalid, and thus, it would not have automatically invalidated his actions, including delegating authority to make benefits determinations or ratifying such delegations. In *Collins*, the Supreme Court found the unconstitutional removal provision did not render the FHFA's appointments invalid, and thus did not automatically void the FHFA's actions under the Director. 141 S.Ct. 1787 ("Although the statute unconstitutionally limits the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA [that were challenged on appeal] as void."). Accordingly, infirmities in removal provisions do not automatically void appointments or actions taken by properly appointed officials. *Alice A. v. Comm'r of Soc. Sec.*, 2021 WL 5514434, *6 (finding that '[t]he infirm *removal* provision does not render Commissioner Saul's *appointment* invalid, which in turn does not render the ALJ's disability determination void.") (emphasis in original); *John R. v Comm'r of Soc. Sec.*, 2021 WL 5356719, *8 (finding that the unconstitutional "removal provision does not render the Commissioner's appointment invalid, and thus does not automatically void the SSA's actions under the Commissioner").

Instead, to obtain reversal of an agency decision, a plaintiff must show "compensable harm" flowing from an unconstitutional removal clause. *Collins*, 141 S.Ct. 1788–89 (remanding for further proceedings to determine whether compensable harm to Plaintiff occurred due to the President's inability to remove a Director of the FHFA except for cause). Here, Plaintiff makes no such showing. Plaintiff asserts that her injuries flow from an illegitimate delegation of power resulting in an invalid adjudication and determination by the Appeals Council. (Doc. 9 at 13). In so doing, Plaintiff appears to conflate issues that might have presumably flowed from the

17

unconstitutional *appointment* of Former Director Saul with a provision allowing for his unconstitutional *removal*. As explained above, however, appointments are not nullified by an unconstitutional removal provision. Nor are actions taken by a properly appointed official.

In short, Plaintiff has not pointed to a connection between any unconstitutional limit on Former Director Saul's removal and the ALJ's determination denying her benefits. *See also Calcutt v. FDIC*, No. 20-4303, 2022 WL 2081430, at *14–15 (6th Cir. June 10, 2022) (holding that "*Collins* [ ] provides a clear instruction: To invalidate an agency action due to a removal violation, that constitutional infirmity must 'cause harm' to the challenging party[,]" and "vague, generalized allegations" of harm do not demand relief); *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1138 (9th Cir. 2021) (finding that "there is no link between the ALJ's decision awarding benefits and the allegedly unconstitutional removal provisions. And nothing commands us to vacate the decisions below on that ground."). Nor is it likely that Plaintiff could do so, given that any particular ALJ or Appeals Council decision would not concern the President. *Cf. Collins*, 141 S.Ct. at 1802 (Kagan, J. concurring) ("The SSA has a single head with for-cause removal protection . . . But . . . I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone . . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference.").

For all these reasons, the Undersigned finds that Plaintiff's separation of powers claim lacks merit. Accordingly, the Undersigned does not reach the Commissioner's alternative arguments including harmless error, de facto officer, the rule of necessity, and other prudential considerations.

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's decision.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date: July 26, 2022 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE